Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| John Doe | § | |
| | § | |
| *Plaintiff*, | § | Case No. 4:25-cv-3585 |
| | § | |
| v. | § | |
| | § | |
| U.S. DEPARTMENT OF HOMELAND | § | Date: August 2, 2025 |
| SECURITY, KRISTI NOEM, U.S. | § | |
| CITIZENSHIP AND IMMIGRATION | § | |
| SERVICES, KIKA SCOTT, U.S. | § | |
| IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT, TODD M. LYONS, | § | |
| U.S. CUSTOMS AND BORDER PROTECTION, | § | |
| PETE R. FLORES, U.S. DEPARTMENT OF | § | |
| JUSTICE, PAMELA BONDI | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Plaintiff, John Doe (hereinafter "Plaintiff"), brings this action against the Defendants, challenging their imposition of an Interim Final Rule ("IFR") through which Defendants impose a new, universal immigration registration regime, under which noncitizens, like Plaintiff, must register with the federal government within 30 days, submit fingerprints and other biometric information, and carry proof of this registration at all times or face arrest and federal prosecution.

Plaintiff brings this action against Defendants because this new registration requirement violates his Fifth Amendment right against self-incrimination under the U.S. Constitution.

Accordingly, Plaintiff seeks declaratory relief and injunctive relief against Defendants, to protect his rights arising under the laws and Constitution of the United States.

## I.  INTRODUCTION

1.  This case concerns a fundamental right and privilege guaranteed to every person in the United States—the Fifth Amendment's protection against self-incrimination.

2.  On March 12, 2025, Defendants issued the IFR to go into effect on April 11, 2025. The IFR creates new requirements for all noncitizens 14 years of age or older who remain in the United States for at least 30 days and not currently

2

registered and fingerprinted under the existing scheme. The IFR indicates that all noncitizen children must re-register and be fingerprinted using this new process when they turn 14.

3.  The IFR likewise requires parents and legal guardians to register all unregistered children under the age of 14. *See* U.S. Citizenship & Immigration Servs., Alien Registration Form and Evidence of Registration, 90 Fed. Reg. 11793 (Mar. 12, 2025).

4.  Without the benefit of notice and comment, the IFR creates an incoherent registration scheme, reversing the government's long-standing approach to registration—a limited registration policy that has been in place since the end of World War II—in a manner that will cause confusion, fear, and significant economic disruption. Defendants attempt to rush through these sweeping changes without any meaningful explanation for the change in policy and without the notice, public comment, and careful consideration that Congress requires to avoid exactly these types of harm.

5.  Importantly, this requirement infringes upon Plaintiff's Fifth Amendment's right against self-incrimination, in that it compels him to give incriminating information against himself, and therefore violates the Fifth Amendment.

6.  As such, Plaintiff files this complaint for declaratory and permanent injunctive relief, declaring the IFR unlawful, and enjoining Defendants from enforcing

the IFR against him.

## II. JURISDICTION AND VENUE

7.  This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, because this is a civil action arising under the Constitution and laws of the United States.

8.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (e), because Plaintiff, Jose Doe, resides in Houston, Texas, which is in the Southern District of Texas.

## III.  PARTIES

9.  Plaintiff John Doe is a noncitizen who resides in Houston, Texas. Plaintiff is filing concurrently with the present Complaint, a Motion for Leave to Litigate this Case under a Pseudonym.

10. Defendant Department of Homeland Security ("DHS") is a cabinet-level department of the U.S. federal government. Its components include U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE").

11. Defendant Kristi Noem is the Secretary of DHS. She is sued in her official capacity. Defendant Noem directs each of the component agencies within the DHS. In her official capacity, she is responsible for the administration of the

immigration laws pursuant to 8 U.S.C. § 1103 and she issued the IFR.

12. Defendant USCIS is the sub-agency of DHS that administers registration forms and the collection of biometrics, including fingerprints.

13. Defendant Kika Scott is the Senior Official Performing the Duties of USCIS Director. She is sued in her official capacity.

14. Defendant ICE is a sub-agency of DHS responsible for enforcing immigration laws.

15. Defendant Todd M. Lyons is the Acting Director of ICE. He is sued in his official capacity.

16. Defendant CBP is a sub-agency of DHS responsible for enforcing immigration laws.

17. Defendant Pete R. Flores is the Acting Commission of CBP. He is sued in his official capacity.

18. Defendant Department of Justice ("DOJ") is a cabinet-level department of the U.S. federal government.

19. Defendant Pamela Bondi is the Attorney General. She is sued in her official capacity. In her official capacity, she is tasked with enforcing federal criminal laws, including 8 U.S.C. §§ 1304(e) and 1306.

## IV.    LEGAL AND PROCEDURAL BACKGROUND

20. The U.S. Constitution protects individuals from compelled testimony that

could be used against them in a criminal case. *See* U.S. CONST. amend. V.

21. This privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951); *Emspak v. United States*, 349 U.S. 190 (1955); *Blau v. United States*, 340 U.S. 332 (1951); *Blau v. United States*, 340 U.S. 159 (1950).

22. This protection, rooted in a judgment . . . that the prosecution should not be free to build up a criminal case . . . with the assistance of enforced disclosures by the accused, applies to all persons in the United States, regardless of immigration status. *See Ullmann v. United States,* 350 U.S. 422 (1956).

23. This privilege can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory, and protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. *See Kastigar v. United States*, 406 U.S. 441 (1972).

24. To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled. *See United States v. Hubbell*, 530 U. S. 27, 34–38 (2000); *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177 (2004).

25. In order to be testimonial, oral or written communication, or act, must itself, explicitly or implicitly, relate a factual assertion or disclose information. *See Doe v. United States*, 487 U.S. 201 (1988).

26. To be incriminating, the communication must disclose information that the person reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. *See Kastigar v. United States, supra.* Communications that "would furnish a link in the chain of evidence needed to prosecute [a person] for a federal crime" are considered incriminating, "even if the information itself is not inculpatory." *See Hoffman, supra*. Indeed, people are protected from incriminating disclosures irrespective of guilt or innocence. *See Ohio v. Reiner*, 532 U.S. 17 (2001).

27. Finally, the Supreme Court articulated in *Bram v. United States*, 168 U.S. 532 (1897) – often cited as the first major Supreme Court case addressing self-incrimination – that a confession is "compelled" … where the government has exerted "any degree of influence" during the suspect's interrogation.

28.  The Court has also found that self-incriminating testimony was compelled through statutory registration mandates, including those that required completion of forms to register as a member of the Communist party and as a person engaged in the business of accepting wagers, where failure to do so could result in criminal penalties. *See Albertson v. SACB*, 382 U.S. 70 (1965);

*see also Marchetti v. United States*, 390 U.S. 39 (1968).

29. Similarly, in the present case, there is a statutory requirement, requiring registration of (otherwise unregistered) noncitizens, implemented through USCIS Form G-325R, with failure to register carrying criminal penalties. *See* 8 U.S.C. §§ 1302, 1306(a).

30. Thus, under existing jurisprudence, the Registration requirement compels testimony. This is especially true for individuals who entered without inspection, never encountered immigration officials, and have no pathway to immigration status, as such individuals can only register via Form USCIS G-325R.

31. In sum, because Form G-325R compels unregistered noncitizens to submit incriminating information to the government, it runs afoul of the Self-Incrimination Clause.

32. Plaintiff is aware of the required records doctrine of *Shapiro v. United States*, 335 U.S. 1 (1948), which applies when the inquiry is essentially regulatory; second, the information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and third, the records themselves must have assumed "public aspects" which render them at least analogous to public documents.

33. However, where required disclosures are "directed at a highly selective group

inherently suspect of criminal activities," the exception does not apply. *See Albertson v. SACB, supra.*

34. Like in *Marchetti* and *Albertson,* Plaintiff's assertion of his Fifth Amendment right is not asserted in an essentially noncriminal and regulatory area of inquiry, but against an inquiry in an area permeated with criminal statutes, where response to the form's questions in context might involve Plaintiff in the admission of a crucial element of a crime.

35. Indeed, the Supreme Court has held that the right against self-incrimination could be asserted to avoid registering with the Internal Revenue Service as an individual who accepts wagers because "wagering is 'an area permeated with criminal statutes,' and those engaged in wagering are a group 'inherently suspect of criminal activities.'" *See Albertson v. SACB, supra.*

36. Similarly, the right against self-incrimination could be asserted to avoid compliance with a statutory scheme requiring members of the Communist Party to disclose their party membership where admission could reasonably be used to criminally prosecute them in a similarly permeated area. *See Marchetti v. United States, supra.*

37. 8 U.S.C. § 1302, limits the registration requirement to every noncitizen who "has not been registered" through the visa issuance process under 8 U.S.C. § 1201.

38. Essentially, this means that the people who are required to register under the statute are those who entered the United States unlawfully.

39. Additionally, because there are other ways for noncitizens who entered unlawfully to comply with the registration requirement, including by acquiring lawful status, the Registration Form specifically targets those who entered unlawfully, could be the subject of prosecution, and for whom there is no pathway to regularize status.

40. As such, the Registration Requirement is far from being directed at "the public at large," rather, the Registration Form primarily targets a highly selective group inherently suspect of criminal activities — those who entered irregularly and are thus subject to prosecution for improper entry or reentry. Accordingly, the required records doctrine should not apply.

## V.  FACTUAL ALLEGATIONS

41. Prior to the amendment published at 90 FR 11800, Mar. 12, 2025, the agencies had, for over half a century, complied with the regulations which provide that registration and proof of registration is obtained through existing forms for gaining admission and establishing immigration status. *See* 8 C.F.R. § 264.1(a), (b).[1] The regulations contain two lists: acceptable registration forms, *id*. § 264.1(a), and evidence of registration, *id*. § 264.1(b). The list did not

---

[1] Prior to amendment published at 90 FR 11800, Mar. 12, 2025.

include the recently added USCIS Proof of Alien G-325R Registration, or its successor form. *See* 8 C.F.R. § 264.1(a), (b).

42. In addition to listing forms for registration and proof of registration, the current regulations waive the fingerprint requirement for certain categories of nonimmigrants while they maintain their nonimmigrant status, including all nonimmigrants who remain in the United States for less than one year. *See* 8 C.F.R. § 264.1(e); *see also* 8 U.S.C. § 1302(c).[2]

43. Also, as has been the case for decades, the regulations did not include a registration form or evidence of registration for a noncitizen who has entered without inspection and is ineligible for any immigration benefit. Noncitizens who were ineligible to use one of the designated registration forms were under no enforceable obligation to register or to carry any proof of registration. *See* 8 U.S.C. § 1306(a) (punishing "*willful failure to register*") (emphasis added); *United States v. Mendez-Lopez*, 528 F. Supp. 972, 973 (N.D. Okla. 1981).

44. However, on the day of his inauguration, President Trump issued Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed. Reg. 8443 (Jan. 29, 2025) [hereinafter Jan. 20 Executive Order]. Through that order, President Trump instructed the Secretary of

---

[2] At various times in the 1990s the INS required nonimmigrants from certain countries to submit fingerprints at ports of entry as part of their applications for admission. *See* 56 Fed. Reg. 1566 (Jan. 16, 1991); 61 Fed. Reg. 46829 (Sept. 5, 1996); 63 Fed. Reg. 39109 (July 21, 1998).

Homeland Security, in coordination with the Attorney General and the Secretary of State, to "(a) Immediately announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of [the registration statutes]; (b) Ensure that all previously unregistered aliens in the United States comply with the requirements of [the registration statutes]; and (c) Ensure that failure to comply with the legal obligations of [the registration statutes] is treated as a civil and criminal enforcement priority." 90 Fed. Reg. at 8444.

45. On February 5, 2025, Attorney General Bondi issued a memorandum in which she instructed that DOJ "shall use all available criminal statutes . . . to support the Department of Homeland Security's immigration and removal initiatives."[3] Among the statutes prioritized by the Attorney General for enforcement were 8 U.S.C. §§ 1304, 1306. *Id.*

46. On February 25, 2025, USCIS posted on its website notice that a new registration form and process was forthcoming for individuals not counted as registered under the existing regulations. On that same day, DHS announced the new requirement under the heading "DHS Will Use Every Available Tool

---

[3] Memorandum from the Attorney General re: General Policy Regarding Charging, Plea Negotiations, and Sentencing (Feb. 5, 2025), https://tinyurl.com/ycxa3ua9 ["Bondi Memo"]

to Compel Illegal Aliens to Self-Deport."[4] Defendant Noem explained that noncitizens had a choice to register and self-deport or face criminal enforcement, stating that the government would help noncitizens who register "relocate right back to their home country."[5]

47. On March 12, 2025, less than two months into the start of the Trump administration, Defendants published the eight-page IFR seeking to upend immigration registration. Defendants do so without explaining this change in policy – or even acknowledging the change. To the contrary, Defendants claim that the IFR "does not impose any new registration or fingerprinting obligations separate from the obligations already contained in the Act." 90 Fed. Reg. at 11796.

48. Defendants issued the IFR without a notice or any opportunity to comment, asserting that it "is a rule of agency organization, procedure, or practice ('procedural rule')," because it "does not alter the rights or interests of any party." 90 Fed. Reg. at 11796 (citing 5 U.S.C. § 553(b)(A)). The IFR only invited comments on whether to impose a $30 biometrics fee. *Id.*

49. The IFR creates a new online general registration form, Form G-325R. *See* 90

---

[4] *See* Press Release, DHS, Secretary Noem Announces Agency Will Enforce Laws That Penalize Aliens in the Country Illegally (Feb. 25, 2025), https://tinyurl.com/mrex6hhy
[5] Billal Rahman, *Kristi Noem Breaks Down How Federal Migrants Register Works*, Newsweek, https://tinyurl.com/bdz9prye  (Feb. 26, 2025) (quoting Secretary Noem interview).

Fed. Reg. at 11795. 48. Form G-325R can only be submitted online through myUSCIS.gov. 90 Fed. Reg. at 11795. A noncitizen must first create a unique account through myUSCIS.gov for themself or for their child. *Id*. Also, Form G-325R is only available in English, which renders it unusable by numerous noncitizens.

50. Among the required questions on the form are: "Have you EVER committed a crime of any kind (even if you were not arrested, cited, charged with, or tried for that crime, or convicted)?" "Since entry, in what activities have you been engaged?" "In what activities do you intend to engage between now and your expected date of departure?"

51. The new form collects information beyond what is specifically enumerated in the statute. *See* 8 U.S.C. § 1304(a).

52. In addition to creating an entirely new form independent of any immigration process, the IFR creates a process for DHS to collect biometrics, including fingerprints, photographs, and signatures, at a USCIS Application Support Center ("ASC") upon submission of the Form G-325R. See 90 Fed. Reg. at 11795. USCIS will schedule an appointment at an ASC for noncitizens to submit their biometrics. *Id*. After the biometrics appointment, or, for children under 14 or Canadian nonimmigrants not required to be fingerprinted after the submission of the Form G-325R, USCIS will generate an online "Proof of

Alien Registration." *Id.*

53. The IFR outlines the criminal consequences that purportedly attach to these new obligations:

    a. Noncitizens not previously registered through the visa process and newly required to register and be fingerprinted under the IFR can be prosecuted if they fail to register or to be fingerprinted. *See* 90 Fed. Reg. at 11794 (citing 8 U.S.C. § 1306(a)).

    b. Noncitizens newly issued proof of registration and fingerprinted under the IFR who are 18 years of age or over can be prosecuted for failure to carry that proof of registration at all times. *Id.* (citing 8 U.S.C. § 1304(e)).

    c. Noncitizens newly required to register under the IFR can be prosecuted for failing to notify DHS within 10 days from any change of address. *See id.* (citing 8 U.S.C. § 1306(b)).

54. Defendants intend to vigorously enforce these new criminal consequences. *See* Jan. 20 Executive Order; Bondi Memo at 3 (Feb. 5, 2025) (instructing that U.S. Attorneys' offices and other DOJ components "shall pursue charges relating to criminal immigration-related violations," including sections 1304 and 1306).

55. With just 30 days' warning, the IFR abandoned the eighty-year-old approach

to registration and imposes a new universal registration scheme and attendant civil and criminal liabilities on an enormous number of people. According to Defendants' own estimates, between 2.2 million and 3.2 million people would be newly required to register. *See* 90 Fed. Reg. at 11797.

56. Significantly, the IFR fails to consider or address the fact that the new registration requirement infringes on noncitizens' Fifth Amendment privilege against self-incrimination. *See Grosso v. United States*, 390 U.S. 62, 67-68 (1968). The IFR targets almost exclusively noncitizens who entered the United States "without inspection and admission or inspection and parole"— in other words, noncitizens who entered the United States in violation of the federal criminal statute 8 U.S.C. § 1325. *See* 90 Fed. Reg. at 11797; *see id*. at 11793 (noting that 8 U.S.C. § 1302 excludes "visa holders").

57. In fact, the question that asks, "Immigration status at last arrival" in Form G-325R provides a blank text box and only one pre-printed text option in the dropdown menu of answers: "EWI – Entry Without Inspection." Moreover, the form requires the submitter to state whether the person has "EVER committed a crime of any kind." Thus, a noncitizen who submits Form G-325R implicates themselves in a crime.

58. Plaintiff, John Doe, is a noncitizen who falls within the category of noncitizens required to register under the IFR.

16

## VI.    CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### (Violation of the Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2)(D))

59. Plaintiff incorporates by reference the allegations in paragraphs 1-58.

60. The Administrative Procedure Act ("APA"), 5 U.S.C. § 553, requires that agencies provide public notice of, and opportunity to comment on, legislative rules before their promulgation. *See* 5 U.S.C. §§ 553(b), (c).

61. The IFR is a legislative rule within the meaning of the APA.

62. Defendants issued the IFR without prior notice and an opportunity for comment as required by the APA.

63. The IFR is not a procedural rule because it alters the rights and interests of parties, imposes new substantive obligations and criminal liability, and collects personal information not required by the INA.

64. Defendants' failure to provide for notice and comment violates 5 U.S.C. §§ 553(b) and (c), 706(2)(D).

65. The APA also provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

66. Among other reasons, the IFR is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasonable explanation for their decision, which represents a change in the agency's longstanding policy;

17

failed to consider reasonable alternatives; entirely failed to consider important aspects of the problem; and failed to take into account reliance interests.

## SECOND CLAIM FOR RELIEF
### (Violation of the U.S. Const. amend. V)

67. Plaintiff incorporates by reference the allegations in paragraphs 1-66.

68. The Registration Form made under the Defendants' IFR satisfies the Supreme Court's requirements for assertion of the Fifth Amendment Privilege, since it compels self-incriminating testimony. *See United States v. Hubbell, supra.*

69. The Registration Form primarily targets a highly selective group inherently suspect of criminal activities — those who entered the United States irregularly and are thus subject to prosecution for improper entry or reentry. *See Albertson v. SACB, supra.*

70. The Registration Form also directly solicits incriminating information, requiring noncitizens not only to answer questions incriminating them in the crime of illegal entry and/or illegal re-entry, but also to answer questions such as "Have you EVER violated (or attempted or conspired to violate) any controlled substance law or regulation of a state, the United States, or a foreign country?"

71. As a result, the Defendants' IFR is unconstitutional, on the basis that it violates Plaintiff's Fifth Amendment Right against self-incrimination.

18

## VII. PRAYER FOR RELIEF

72. Wherefore, Plaintiff respectfully requests that this Court:

   a.  accept jurisdiction and venue as proper;

   b.  issue a declaratory judgment on behalf of Plaintiff, declaring that the IFR violates Plaintiff's rights under the Fifth Amendment to the United States Constitution;

   c.  Declare unlawful and set aside the IFR;

   d.  Enter an order vacating the IFR;

   e.  Issue an order permanently enjoining Defendants and all those acting in concert with them from enforcing or implementing the IFR against Plaintiff;

   f.  Award Plaintiff reasonable attorney's fees, expenses, and costs of court, pursuant to the Equal Access to Justice Act, and any other applicable statute or regulation;

   g.  Grant Plaintiff all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*/s/ Raed Gonzalez*

_____
Raed Gonzalez, Esq.
Attorney for Plaintiff
Texas Bar No. 24010063
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Phone: (713) 481-3040,
Fax:   (713)588-8683
rgonzalez@gonzalezolivierillc.com

19